IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STEFFANY POWELL COKER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 2:18-cv-1364-TMP |
| NORFOLK SOUTHERN CORPORATION, NORFOLK SOUTHERN RAILWAY COMPANY, INC., and TODD REYNOLDS, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

The defendants, Norfolk Southern Corporation ("NSC"), Norfolk Southern Railway Company, Inc., ("Railway"), and Todd Reynolds, bring this cause before the court on their motion to dismiss (doc. 10) the complaint on the basis that it is an impermissible "claim splitting" by the plaintiff. The motion has been fully briefed by the parties, and they have consented to the exercise of dispositive jurisdiction by the undersigned magistrate judge. (Doc. 15).

I. <u>Procedural Background</u>

Prior to the filing of the instant action, the plaintiff filed an earlier complaint in this court on July 17, 2018, styled <u>Powell-Coker v. Norfolk Southern Railway Company, Inc., et al.</u>, No. 2:18-cv-1094-AKK. Herein, the court refers to this

earlier action as Powell-Coker I. With leave of court, she filed an Amended Complaint in the action on August 23, 2018, in which the named defendants were Norfolk Southern Railway Company, Inc., and several of its employees, including Todd Reynolds. The Amended Complaint alleged two claims: (1) retaliation in violation of the Federal Rail Safety Act ("FRSA"), and (2) a claim of outrage under Alabama state law. (Doc. 16 in Case No. 18-1094). Her retaliation claim alleged generally that the named defendants retaliated against her, including by terminating her employment, because she reported internally that she had been instructed to falsify safety-related disciplinary files, thereby hiding the true safety record of the company. Her state-law claim of outrage alleged that defendant Reynolds intentionally or recklessly caused her to suffer emotional distress and mental anguish by sexually harassing her in several different ways, for which she sought damages from all of the defendants. (See *Id.*).

On August 24, 2018, the day after the plaintiff filed her Amended Complaint in Powell-Coker I, she filed the pending complaint in the instant case, which the court will refer to as Powell Coker II. (See Doc. 1 in Case No. 18-1364). As mentioned above, the named defendants in the new complaint are NSC, Railway, and Reynolds, the latter two being defendants also in Powell-Coker I. The complaint in the instant action alleges state-law claims for invasion of privacy, assault and battery, outrage, and negligent supervision and training, and federal

claims under Title VII for hostile work environment and retaliation. All of the claims pleaded in the instant action rest factually on sexual harassment by Reynolds and retaliation for plaintiff's complaints about it. (*Id.*).

After the filing of the complaint in Powell Coker II and during its pendency, a motion to dismiss the Amended Complaint was filed in Powell-Coker I, challenging the claims against various defendants on various grounds, but not asserting "claim splitting" as a basis for dismissal. (Doc. 22 in Case No. 18-1094). On October 19, 2018, Judge Kallon granted the motion to dismiss in part, dismissing the FRSA claim against most defendants (except Railway and Rodney Moore) and dismissing **without** prejudice the outrage claim against all defendants. (Doc. 28 in Case No. 18-1094). On December 21, 2018, the plaintiff filed a motion in Powell-Coker I to consolidate the instant case into it. (Doc. 33 in Case No. 18-1094).

On October 12, 2018, the defendants in the instant action filed their motion to dismiss, arguing that the action must be dismissed as an impermissible violation of the doctrine prohibiting "claim splitting" by a plaintiff. They contend that the claims alleged in Powell Coker II are all within the same factual events and transactions that make up the claim underlying Powell-Coker I, even though some of the parties are different and the legal theories of relief are different, and that the plaintiff is not permitted by the "claim splitting doctrine" to file a second lawsuit

on legal theories that should have been included in Powell-Coker I. The plaintiff opposes the motion.

II. Discussion

The doctrine prohibiting claim splitting is one facet of the larger doctrine of *res judicata* or claim preclusion. Vanover v. NCO Financial Servs., Inc., 857 F.3d 833, 841 (11th Cir. 2017) (citing Davis v. Sun Oil Co., 148 F.3d 606, 613 (6th Cir. 1998) (per curiam)). Under the doctrine, a plaintiff has "no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." Curtis v. Citibank N.A., 226 F.3d 133, 139 (2d Cir. 2000); Vanover v. NCO Financial Servs., Inc., 857 F.3d 833, 841 (11th Cir. 2017). To determine whether a case violates claim splitting, the court is required to apply a two-factor test: "(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." Vanover, at 841-842 (quoting Khan v. H & R Block E. Enters., Inc., No. 11-20335-Civ, 2011 WL 3269440, at *6 (S.D. Fla. July 29, 2011)). The requirement that the successive actions involve "the same parties and their privies," however, is limited to those parties over whom the court has personal jurisdiction. See Rumbough v. Comenity Capital Bank, No. 18-10155, 2018 WL 4293309, at *2 (11th Cir. Sept. 10, 2018) (unpublished). Where a party in a successive suit was never subject to the personal jurisdiction of the court in the

4

earlier action, claim splitting cannot be invoked by that party. In Rumbough, the court of appeals concluded that it was error for the district court to dismiss the plaintiff's claim against Equifax (even though it affirmed the dismissal of claims against other defendants), because the court never established personal jurisdiction over it. The court explained:

> The *Rumbough I* court dismissed Rumbough's claim against Equifax because Rumbough had failed to effect service within the 90 day period mandated by the Federal Rules of Civil Procedure. Because Equifax was never properly served, the *Rumbough I* court never had jurisdiction over it. *See Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104, 108 S. Ct. 404, 98 L.Ed.2d 415 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). Absent jurisdiction, our claim-splitting rule does not preclude Rumbough's second suit against Equifax. *See Borrero v. United Healthcare of New York, Inc.*, 610 F.3d 1296, 1307 (11th Cir. 2010) (quoting *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 84 F.3d 1388, 1392 (11th Cir. 1996)) ("It is well-established that the general rule against splitting causes of action does not apply when suit is brought in a court that does not have jurisdiction over all of a plaintiff's claims."); *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 25 cmt. e (1982) ("If ... the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground ... then a second action in a competent court presenting the omitted theory or ground should be held not precluded.").

Rumbough v. Comenity Capital Bank, No. 18-10155, 2018 WL 4293309, at *2 (11th Cir. Sept. 10, 2018). When the court in the first case has never exercised personal jurisdiction over a party, no judgment that might have been entered would

be binding on that party. Because the doctrine prohibiting claim splitting is part of *res judicata*, "the test 'is… whether the first suit, assuming it were final, would preclude the second suit.'" Rumbough v. Comenity Capital Bank, No. 18-10155, 2018 WL 4293309, at *1 (11th Cir. Sept. 10, 2018) (unpublished) (quoting Hatch v. Boulder Town Council, 471 F.3d 1142, 1150 (10th Cir. 2006)). Hence, the jurisdictional inability of a court to enter a binding judgment on an unserved or unnamed party precludes the application of the claim-splitting doctrine by that party in a subsequent suit.

The second factor addresses whether the two lawsuits involve the same "claim." The term "claim" is not limited merely to the actual legal theories of relief pleaded in the two cases. Rather, a "claim" in this sense is the "subject matter" of the controversy, whether the two cases arise from the same nucleus of events and transactions between the parties. The Eleventh Circuit Court of Appeals explained it this way:

> Successive causes of action arise from the same transaction or series of transactions when the two actions are based on the same nucleus of operative facts. Petro-Hunt, L.L.C. v. United States, 365 F.3d 385, 395–96 (5th Cir. 2004)…. The Fifth Circuit has adopted the transactional test of the RESTATEMENT (SECOND) OF JUDGMENTS, § 24, which instructs the district court to consider the following factors:
>
>> What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or

>motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. [Hence,] "[t]he critical issue is whether the two actions under consideration are based on the *same nucleus of operative facts*."
>
>Petro-Hunt, 365 F.3d at 396 (footnotes omitted).

Vanover v. NCO Financial Servs., Inc., 857 F.3d 833, 842 (11th Cir. 2017) (italics in original). It is immaterial that the legal theories pleaded in one case differ from the legal theories pleaded in the other if both cases rest on the same factual subject matter or series of events and transactions. Because the objective of the claim-splitting rule is "to promote judicial economy and shield parties from vexatious and duplicative litigation while empowering the district court to manage its docket," Vanover, at 843, "the addition of separate causes of action in [the second lawsuit] does not prevent application of the claim-splitting doctrine." Id. If the factual subject matter of the controversy being litigated between the same parties (or their privies) in both actions is the same, both involve the same "claim," and that claim cannot be split between two or more lawsuits.

Applying these principles to the instant case, it is clear that the plaintiff's argument that this case is not the same "claim" as Powell-Coker I because different statutory foundations are used for her legal theories is unavailing. The question is not whether this case involves the same theories of recovery as the first-filed

case—it plainly does not. Rather, the question is whether the two suits involve the same factual subject matter, or, stated another way, whether they rest on the same series of events and transactions. Framed in this way, it is clear that both lawsuits involve the same "claim," both resting on the events and transactions leading to the plaintiff's loss of employment with Railway and Reynolds' role in that loss. The hostile work environment claim, while intellectually distinct from her claim of retaliatory discharge, involves the same set of facts as to whether she was discharged in retaliation for blowing the whistle on the alleged falsification of safety records under the FRSA.

It is also clear that the plaintiff, Railway, and Reynolds are the same parties in both lawsuits. In Powell-Coker I, the named defendants are the same Norfolk Southern Railway Company, Inc., and Todd Reynolds as are named defendants in the instant action. Railway and Reynolds are entitled to invoke the doctrine prohibiting claim splitting as a basis for dismissal of Powell Coker II against them.

What is not clear is whether Norfolk Southern Corporation is entitled to do so. It is indisputable that NSC was not a named party in Powell-Coker I, but it argues in the instant case that it is "in privity" with Railway, which was a named defendant in that case, and thus entitled to invoke the rule against claim splitting based in Railway's presence as a defendant in the first-filed case. The court is unconvinced on the basis of the record now before it.

In the context of *res judicata* and the related doctrine against claim splitting, whether two entities are in privity so that litigation by one binds the other is a fact question. Hart v. Yamaha-Parts Distributors, Inc., 787 F.2d 1468, 1472 (11th Cir. 1986) ("A district court's determination as to whether interrelated corporations are in privity with each other is a factual question which should not be reversed unless its determination is clearly erroneous.") (citing Astron Industrial Associates, Inc. v. Chrysler Motors Corp., 405 F.2d 958, 961 (5th Cir.1968)); see also Luster v. Premier Bankcard, LLC, No. 1:15-CV-0154-LMM, 2016 WL 7826668, at *6 (N.D. Ga. June 7, 2016) (making finding of fact as to privity between sister corporations). With respect to alleged privity between a subsidiary party in litigation and its parent corporation, the Eleventh Circuit has described an "alter-ego" theory, which, in effect, finds privity only if the non-party parent controlled the subsidiary party in litigation. The court explained in Hart:

> Although parent and subsidiary corporations have been held to be in privity with each other in some circumstances, most of these cases addressed the question whether a parent corporation is bound or protected by litigation conducted by its subsidiary. *See, e.g., Astron Industrial Associates, Inc.*, 405 F.2d at 961 (wholly-owned subsidiary was operated by an officer of parent and parent's Board of Directors authorized subsidiary's suit); *Pan American Match Inc. v. Sears, Roebuck and Co.*, 454 F.2d 871, 874 (1st Cir.1972) (parent conveyed subject property to wholly-owned subsidiary long before litigation arose, parent aware of subsidiary's litigation and participated in its defense). Privity between parent and subsidiary corporations generally is governed by the rules that apply to shareholders and their corporations. 18 C. Wright, A. Miller & E. Cooper, FEDERAL

> PRACTICE AND PROCEDURE § 4460 at 534 (1981). In this circuit, stockholders are not in privity with their corporations unless they are found to be alter egos. *Dudley v. Smith*, 504 F.2d 979, 982 (5th Cir. 1974). If the alter ego doctrine applies, "'the corporation and the person who dominates it are treated as one person, so that any act committed by one is attributable to both, and if either is bound, by contract, judgment, or otherwise, both are equally bound....'" *Id.* (quoting *Shamrock Oil and Gas Co. v. Ethridge*, 159 F.Supp. 693, 697 (D.Colo.1958)). The record contains only the defendants' contradictory, generalized representations regarding the relationship between YMC/USA and Yamaha Parts. In particular, there are no facts as to the percent of ownership, YMC/USA's right or ability to control Yamaha Parts, or whether these entities operated independently or as one unit. Due to the lack of any factual basis for its determination, we find the district court was clearly erroneous in concluding Yamaha Parts was in privity with YMC/USA.

Hart v. Yamaha-Parts Distributors, Inc., 787 F.2d 1468, 1472–73 (11th Cir. 1986) (internal footnotes omitted); see also PJ United, Inc. v. Camron, No. 7:15-CV-00955-LSC, 2016 WL 10100762, at *3 (N.D. Ala. March 23, 2016) (holding that evidence failed to establish that a parent and subsidiary were alter egos because "[s]tanding alone, an ownership interest of an unknown percentage does not make the entities alter egos of one another.").[1] A parent corporation owns all or a major portion of the stock in the subsidiary. Under the "alter ego" theory of privity, it

---

[1] It should be noted that Judge Coogler concluded that the Supreme Court has rejected the Eleventh Circuit's "virtual representation" theory of privity in favor of six narrow categories in which privity might exist. "Although the Supreme Court rejected virtual representation generally, the narrow conception of alter ego privity might fall into the second category of exceptions in Taylor describing parties with 'substantive legal relationships.'" PJ United, Inc. v. Camron, No. 7:15-CV-00955-LSC, 2016 WL 10100762, at *3 (N.D. Ala. March 23, 2016) (quoting and citing Taylor v. Sturgell, 553 U.S. 880, 893-95(2008)).

must be shown that the stockholder (parent corporation) exercises such control over the subsidiary corporation that the subsidiary is the mere alter ego of the stockholder.

Attempting to carry this burden of proof, the defendants have offered a few pages from NSC's 2017 10-K filing with the Securities and Exchange Commission to show that Railway is NSC's subsidiary. There are two problems with this assertion: the court cannot take judicial notice of the *facts* stated in the 10-K filing (as distinct from the fact of the filing itself) and, even assuming the court can assume the facts in the filing to be true, they simply do not establish the level of control by the parent necessary to satisfy the alter ego theory of privity.

The defendants present the 10-K SEC filing to the court and contend that the court can take judicial notice of it to prove the fact that Railway is a subsidiary under the control of NSC. It is true the court can take judicial notice of the fact of the *filing* of the 10-K statement, but it is not correct that the court can take judicial notice of the *truthfulness* of the facts stated in the filing. The fact that the 10-K statement was filed with the SEC is one thing; the truthfulness of the factual representations made in the 10-K filing is something else. The leading case, Bryant v. Avado Brands, Inc., 187 F.3d 1271 (11th Cir. 1999), makes this very point: "[W]e hold that a court, when considering a motion to dismiss in a securities fraud case, may take judicial notice (for the purpose of determining what

statements the documents contain and *not to prove the truth of the documents' contents*) of relevant public documents required to be filed with the SEC, and actually filed." Id. at 1278 (italics added) (footnote omitted). Footnote 10 in the Bryant decision emphasizes the limited nature of the allowable judicial notice. Judicial notice can be taken only of the fact that an SEC public filing contains a relevant statement, but not for the truthfulness of that statement. See also Fed. R. Evid. 201; Lozman v. City of Riviera Beach, 713 F.3d 1066, 1075 n. 9 (11th Cir.Fla. 2013); U.S. ex rel. Osheroff v. Humana Inc., 776 F.3d 805, 812 (11th Cir. 2015).[2] Thus, insofar as the defendants offer NSC's 10-K filing to prove the *fact* that Railway is a subsidiary of NSC, it is not competent evidence of which the

---

[2] In the context of documents filed in other courts, this court has explained recently:

> A court may take judicial notice of the fact of the filing of a complaint or pleading in the public records of another court. "Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage." *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 (11th Cir. 2015)(citing Fed. R. Evid. 201; *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n. 9 (11th Cir. 2013)). The court may not, however, take judicial notice of the contents of a public filing for proof of the truth of factual matter asserted in the filing. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277 (11th Cir. 1999)(citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996))(holding with respect to publicly-filed documents in connection with a Rule 12(b)(6) motion, "[s]uch documents should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents."). *See also Auto-Owners Ins. Co. v. Morris*, 191 F. Supp. 3d 1302, 1304 (N.D. Ala. 2016), in which Chief Judge Bowdre explained that "the Eleventh Circuit has distinguished between taking judicial notice of the fact that court records or court rulings *exist* versus taking judicial notice of the *truth* of matters stated within those court records or court rulings." (Italics in original).

Hanover Ins. Co. v. BASF Corp., No. 2:18-CV-1418-TMP, 2019 WL 220240, at *1 (N.D. Ala. Jan. 16, 2019).

court is allowed to take judicial notice. In the absence of any other evidence, the defendants have not proven, in fact, that Railway is a subsidiary of NSC.

Even if the court were to accept as a fact that Railway is a subsidiary of NSC, that alone does not establish that the two corporations are alter egos of each other. As Judge Coogler observed in PJ United, Inc. v. Camron, *supra*, "an ownership interest of an unknown percentage does not make the entities alter egos of one another." The 10-K statement offered by the defendants, at most, can establish only that Railway is a subsidiary of NSC. It does not prove what percentage ownership NSC has in Railway and it does not prove that NSC as stockholder exercises such control over Railway that the subsidiary is a mere alter ego of NSC. There is no evidence that NSC controls or directs Railway's litigation of Powell-Coker I. In short, the evidence *now* before the court is simply insufficient to prove that NSC and Railway are alter egos, and therefore it is insufficient to show that NSC and Railway were or are in privity for purposes of the doctrine against claim splitting. While Railway is a named party in Powell-Coker I and can invoke the doctrine as a defense in this case, NSC is not a named party there, and it has not sufficiently established privity with Railway. For that

reason, NSC may not invoke the defense of claim splitting in this action, at least at this stage of the case.³

Accordingly, the court will enter a separate Order GRANTING the motion to dismiss on behalf of Norfolk Southern Railway Company, Inc., and Todd Reynolds, but it will DENY the motion by Norfolk Southern Corporation.

DONE this 31st day of January, 2019.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

---

³ Although the court expresses no opinion on the point, it seems likely that, because the issue of privity is fact-intensive, it cannot be raised effectively until the summary judgment stage of the case. But the court will leave that question to a later day.